UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TROVE BRANDS LLC *et al.*,

                              Plaintiffs,

                    -v-

JIA WEI LIFESTYLE INC.,

                              Defendant.

---

24 Civ. 3050

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Trove Brands LLC, d/b/a The BlenderBottle Company and Runway Blue, LLC

(collectively, "Trove Brands") allege here that defendant Jia Wei Lifestyle Inc. ("Jia Wei")

infringed on Trove Brands's intellectual property rights in a shaker bottle.  Trove Brands sues for

patent infringement under 35 U.S.C. § 271, trademark infringement under 15 U.S.C. § 1114,

trade dress infringement under 15 U.S.C. § 1125(a), deceptive business acts and practices under

New York General Business Law § 349, and unfair competition under New York common law.

Jia Wei now moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss all but the patent

infringement claim.[1]  It separately moves to strike certain paragraphs from the Amended

Complaint under Rule 12(f).  The Court grants the Rule 12(b)(6) motion only with respect to the

New York General Business Law claim.  Jia Wei's motions are otherwise denied.

---

[1] The Court expects to resolve the patent infringement claim at summary judgment, following a
claim construction hearing.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 379
(1996).

1

## I.    Background[2]

Trove Brands is a Utah-based limited liability company that manufactures and sells a product called "BlenderBottle," a shaker bottle that mixes liquids with dietary supplements. AC ¶¶ 2, 9.  The BlenderBottle consists of two elements relevant here: a recessed domed-top lid and a cylindrical bottom that narrows at its base. *Id.* ¶¶ 14, 19.  Trove Brands alleges that the BlenderBottle bears "a distinctive trade dress"[3] that "serves to identify and distinguish BlenderBottle's products from those of others." *Id.* ¶¶ 15, 20.  Trove Brands claims that consumers "readily recognize" the BlenderBottle trade dress as distinctive and associate it with "high-quality products that conform to the specifications created by BlenderBottle." *Id.* ¶¶ 16, 21.  Trove Brands claims that BlenderBottle is "the clear market leader in the shaker cup market, in large part through the popularity of its products that bear the Bottle Trade Dress and Lid Trade Dress." *Id.* ¶ 32.  The product is available in more than 90 countries and in more than 60,000 locations, including major retailers such as Amazon, Costco, Target, Walmart, Sam's Club, and Dick's Sporting Goods. *Id.* ¶ 27.  The BlenderBottle also, as alleged, has received "significant unsolicited media attention" from outlets including *Good Morning America* and *The Today Show*, and "[n]umerous celebrities" have been photographed using the BlenderBottle. *Id.* ¶¶ 28–29.

---

[2] The following facts, assumed true for purposes of resolving the motions, *see Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012), are drawn from the Amended Complaint, Dkt. 37 ("AC").

[3] In intellectual property law, "trade dress" is a term of art used to describe a product's "total image and overall appearance." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992) (citation omitted).  It "involves the total image of a product and may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Id.* (citing Restatement (Third) of Unfair Competition § 16, Comment a (1990)).

The distinctive elements of the BlenderBottle lid (the "Lid Trade Dress") include a "domed top," "conical spout," "pivoting arm," and "circular spout closure element." *Id.* ¶ 14. The Lid Trade Dress is trademarked, *id.* ¶ 12 (citing Ex. 1 (copy of U.S. Trademark Registration No. 6,800,019 (the "'019 Trademark"))), and Trove Brands is the exclusive licensee, *id.* ¶ 12. The BlenderBottle lid is also the subject of two patents: Patent No. D696,551, titled "Bottle Lid Having Integrated Handle"; and Patent No. 8,695,830, titled "Container Lid Having Independently Pivoting Flip Top and Handle." *Id.* ¶¶ 24–25 (capitalization altered).  Trove Brands is the exclusive licensee of each. *Id.*  ¶¶ 24–25.



*Id.* ¶ 11 (depiction of "Lid Trade Dress").

The "Bottle Trade Dress," by contrast, consists in the "overall design" of the product, *id.* ¶ 18, composed of the following seven elements:

    a.  a generally cylindrical bottle that is taller than is wide;

    b.  a top lid element with a smooth, cylindrical lower portion with a rounded upper end;

    c.  a radially recessed domed portion of the lid above the cylindrical portion;

    d.  a conical spout that rises from one side of the dome;

e. a pair of brackets on another side of the dome that, when viewed from the side, have straight sides that merge into a rounded upper end;

f. a generally symmetrical arrangement of the spout and brackets such that, when viewed from the side, the spout and brackets extend from opposite sides of the recessed portion of the lid, extend from approximately the same height on the recessed portion of the lid, and extend to approximately the same height above the recessed portion of the lid's top; and

g. a flip-cap with a cylindrical end that lies between the brackets; a plank portion with a curved end that forms a bridge between the brackets and spout; and a rim with a circular cross-section that extends down from the bottom of the plank at the spout end.

*Id.* ¶ 19.



*Id.* ¶ 18 (depiction of "Bottle Trade Dress"). Trove Brands does not claim to own a patent or trademark in the Bottle Trade Dress.

Jia Wei is a Taiwan-based company that manufactures and distributes products to United States-based retailers. *Id.* ¶¶ 4, 43. Trove Brands alleges that Jia Wei "developed, manufactured, imported, advertised, and/or sold shaker bottles and lids" that infringed on Trove Brands's intellectual property rights in the BlenderBottle. *Id.* ¶ 42. Jia Wei's "identical products" are allegedly sold "to identical customers and through overlapping channels of trade and marketing channels." *Id.* ¶ 49. Trove Brands claims that Jia Wei's promotion of an identical

product "is likely to cause confusion, cause mistake, and to deceive as to an affiliation, connection, or association of Defendant and/or its products with BlenderBottle, when there is none," and that Jia Wei's "blatant[] copy" of the BlenderBottle "misappropriate[s] the immense good will that [plaintiff] has spent enormous time, effort, and expense to cultivate in the marketplace." *Id.* ¶¶ 48–49. Trove Brands states that, upon learning that the Jia Wei bottles were being sold at Walmart, it sent several letters to Walmart and Jia Wei demanding that "Defendant cease selling shakers with lids that infringe [Trove Brand's intellectual property rights]." *Id.* ¶ 46. Jia Wei, however, refused to cease distribution of its shaker bottle. *Id.* ¶ 47.

  

*Id.* ¶ 43; *id.*, Ex. 4 (depictions of "Jia Wei Shaker Bottle")

On October 18, 2023, Trove Brands filed a complaint in the United States District Court for the District of Utah. Dkt. 1. On April 22, 2024, on a joint stipulation by the parties, *see* Dkt. 22, the case was transferred to this District. Dkt. 23. On June 11, 2024, Trove Brands filed the Amended Complaint, bringing claims for patent infringement, trade dress infringement, trademark infringement, and state-law claims for unfair competition. Dkt. 37. On June 20, 2024, this Court held an initial pretrial conference. Dkt. 44. On July 2, 2024, Jia Wei filed a

motion to dismiss. Dkt. 46 ("D. Mem."). On July 16, 2024, Trove Brands opposed. Dkt. 49.

("Pl. Mem."). On July 23, 2024, Jia Wei replied. Dkt. 51.

## II.    Motion to Dismiss Under Rule 12(b)(6)

To survive a motion to dismiss under Rule 12(b)(6), a complaint must plead "enough

facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A complaint is properly dismissed where,

as a matter of law, "the allegations in a complaint, however true, could not raise a claim of

entitlement to relief." *Twombly*, 550 U.S. at 558. The Court must assume all well-pled facts to

be true, "drawing all reasonable inferences in favor of the plaintiff." *Koch v. Christie's Int'l

PLC*, 699 F.3d 141, 145 (2d Cir. 2012); *see also A.I. Trade Fin., Inc. v. Petra Bank*, 989 F.2d 76,

79–80 (2d Cir. 1993) ("[A]ll allegations are construed in the light most favorable to the plaintiff

and doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by

the moving party.").

On a Rule 12(b)(6) motion, a court "may review only a narrow universe of materials."

*Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). This includes "the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint." *United States ex rel. Foreman v. AECOM*, 19 F.4th 85, 106 (2d Cir.

2021) (citation omitted). Pursuant to these principles, the Court here considers Trove Brands's

patent and trademark registration documents, attached as Exhibits 1–3 and 6 to the AC, and the

correspondence between Trove Brands, Jia Wei, and Walmart, attached as Exhibits 4–5 to the AC.[4]

Jia Wei moves for dismissal of Trove Brands's claims for trademark infringement under 15 U.S.C. § 1114, trade dress infringement under 15 U.S.C. § 1125(a), deceptive business acts and practices under New York General Business Law § 349, and unfair competition under New York common law.

### A.    The Lanham Act Claims

The Lanham Act protects businesses and consumers by authorizing claims for "the deceptive and misleading use of marks." § 15 U.S.C. § 1127. Section 32(1) prohibits the "use in

---

[4] Jia Wei separately filed a motion to take judicial notice of eight exhibits annexed to its motion to dismiss. Dkt. 47. The Court grants that motion in part. A court may take judicial notice of documents where the documents "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Finn v. Barney*, 471 F. App'x 30, 32 (2d Cir. 2012) (citing Fed. R. Evid. 201(b)(2)). Exhibits A and B, "true and correct copies" of documents publicly filed with the United States Trademark and Patent Office, Dkt. 47, fall in this category. *See Telebrands Corp. v. Del Labs., Inc.*, 719 F. Supp. 2d 283, 287 n. 3 (S.D.N.Y. 2010) ("The Court may properly take judicial notice of official records of the United States Patent and Trademark Office and the United States Copyright Office." (citing *Island Software and Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005)). Trove Brands does not dispute the propriety of taking notice of these exhibits. *See* Dkt. 50. The Court thus grants the motion for judicial notice with respect to Exhibits A and B.

The same cannot be said for the remaining exhibits. Exhibits C, D, F, G, and H are purported screengrabs from plaintiff's BlenderBottle website. Exhibit E is a purported patent record for a shaker bottle "not cited or referenced in the Complaint [nor] owned by BlenderBottle." Dkt. 50. Documents for which judicial notice may be taken may only be used "in order to determine what statements they contained," but "not for the truth of the matters asserted." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (cleaned up). Trove Brands rightly objects to the admission of these exhibits, on the grounds that Jia Wei asks the Court to consider these documents for the truth of their contents—in particular, to dispute factual allegations in the AC. *See* D. Mem. at 13–14, 16–17 (citing exhibits to dispute allegations in the AC). Such is inappropriate on a motion to dismiss. *See Roth*, 489 F.3d at 509; *see also Koch*, 699 F.3d at 145 (on a Rule 12(b)(6) motion, Court accepts all well-pled facts as true). The Court denies the motion to take notice of Exhibits C through H.

commerce . . . of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a). Section 43(a), which extends protection to unregistered marks, prohibits the "use[] in commerce [of] any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person[.]" 15 U.S.C. § 1125(a)(1)(A). The Lanham Act thus protects not just trademarks, which encompasses "any word, name, symbol, or device, or any combination thereof," 15 U.S.C. § 1127, but also "trade dress"—a term that "encompasses the 'look' of a product," which qualifies as "a 'symbol' or 'device' for purposes of this section," *Cardinal Motors, Inc. v. H&H Sports Prot. USA Inc*., No. 23-7586-CV, 2025 WL 409796, at *4 (2d Cir. Feb. 6, 2025) (quoting *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000)).

Trove Brands alleges that Jia Wei violated the Lanham Act by misappropriating the '019 Lid Trade Dress trademark, the Lid Trade Dress, and the Bottle Trade Dress. Claims under Sections 32(1) and 43(a) of the Lanham Act are analyzed under a two-step framework. *See Virgin Enters. Ltd. v. Nawab*, 335 F.3d 141, 146 (2d Cir. 2003); *Gucci Am., Inc. v. Guess?, Inc.*, 868 F. Supp. 2d 207, 237 (S.D.N.Y. 2012). At the first step, the court determines "whether the plaintiff's mark is entitled to protection." *Nawab*, 335 F.3d at 146. At the second step, the court asks whether the defendant's "use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Id.*

8

### 1.    Entitlement to Protection

A mark is entitled to protection only if it is "distinctive"—either "inherently distinctive" or "has acquired distinctiveness through secondary meaning." *Two Pesos*, 505 U.S. at 769. A mark is "inherently distinctive" if its "intrinsic nature serves to identify a particular source." *Id.* at 768; *see also Qualitex Co. v. Jacobson Prod. Co.*, 514 U.S. 159, 162–63 (1995) (inherently distinctive marks "almost automatically tell a customer that they refer to a brand" (emphasis removed)). Even if a mark is not inherently distinctive, it may "acquire" distinctiveness by achieving "secondary meaning" in the marketplace. *Two Pesos*, 505 U.S. at 769. The Court first considers the protectability of the '019 Trademark, and second, the protectability of the Lid and Bottle Trade Dresses.

### a.    *Protectability of the '019 Trademark*

The '019 Trademark was registered on the United States Patent and Trademark Office Principal Register on July 26, 2022. AC ¶ 12 (citing Ex. 1 (proof of registration)). The trademark is pled to be valid and unrevoked. *Id.* ¶ 13. Such registration "creates the presumption that the mark is more than merely descriptive, and, thus, that the mark is inherently distinctive." *Lane Cap. Mgmt., Inc. v. Lane Cap. Mgmt., Inc.*, 192 F.3d 337, 345 (2d Cir. 1999). Where the presumption applies, and a defendant fails to adduce evidence to rebut it, the plaintiff satisfies the distinctiveness inquiry and thus "need not make a showing of secondary meaning to establish that a mark is protectable." *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, 647 F. Supp. 3d 145, 204 (S.D.N.Y. 2022).

Here, Jia Wei attempts to rebut the presumption by claiming that its sale of the product was a "one-off sale" that preceded the trademark registration date. D. Mem. at 6. It relies on a letter attached to the AC indicating that Trove Brands's cease-and-desist letter was sent more

than four months before the trademark's July 26, 2022 registration date. D. Mem. at 6 (citing

AC, Ex. 4). Trove Brands counters that Jia Wei's infringement was not a mere "one-off"

occurrence, but instead "continued and occurred *after* the registration date of the U.S. Trademark

Registration No. 6,800,019." AC ¶ 79 (emphasis added). Trove Brands further alleges that Jia

Wei continues to infringe the registered trademark, and that "despite BlenderBottle's letters,

Defendant has refused to cease distributing the infringing Jia Wei Shaker Bottle." *Id.* ¶ 47.

At the motion to dismiss stage, the Court must credit Trove Brands's allegations that Jia

Wei's infringing use continued after registration of the trademark. *See Koch*, 699 F.3d at 145.

There is nothing in the pleadings that would justify disregarding this well-pled allegation. And

because Jia Wei fails to rebut the presumption, Trove Brands need not demonstrate secondary

meaning to plead that its trademarked property is protectable. *See Focus Prods.*, 647 F. Supp. at

204 (citing *Lane Cap. Mgmt.*, 192 F.3d at 345). The Court sustains the AC's allegation that the

'019 Trademark is inherently distinctive and entitled to Lanham Act protection.

### b.    *Protectability of the Trade Dresses*

Unlike registered trademarks, a plaintiff asserting trade dress rights in product design

must, in addition to the distinctiveness requirement, "surmount additional hurdles" to establish

that the mark is protectable. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 115 (2d Cir. 2001).

The Court addresses each requirement—that the trade dress be (1) articulated, (2) non-functional,

and (3) distinctive—in turn.

### i.    Articulation

The Second Circuit instructs that, before a court may evaluate the elements of a trade

dress infringement claim, a plaintiff "must also articulate with precision the specific components

of its claimed trade dress in the complaint." *Cardinal Motors*, 2025 WL 409796, at *6.

Although the "exact level of precision" required will "vary from case to case," to satisfy this element, a plaintiff's description of the trade dress "must be sufficiently precise as to some specific combination of components present in the trade dress (such as materials, contours, sizes, designs, patterns, and colors) so as to permit courts and juries to adequately evaluate the underlying claims at the appropriate juncture." *Id.* at *7. The articulation requirement, the Second Circuit has explained, serves several purposes, chief among them providing "a crucial guidepost for courts and juries to evaluate the merits of an infringement claim." *Id.* at *6; *see also Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 381 (2d Cir. 1997) ("Without such a precise expression of the character and scope of the claimed trade dress, . . . courts will be unable to evaluate how unique and unexpected the design elements are in the relevant market.").

The Circuit recently held that the articulation requirement was satisfied where the complaint "list[ed] with precision the features that comprise its trade dress." *Cardinal Motors*, 2025 WL 409796, at *8 (quoting 1 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 8:3 (5th ed. 2024) ("[T]he discrete [components] which make up that [trade dress] must be separated out and clearly identified in a list.")). The complaint in *Cardinal Motors* specified several attributes, features, and design details of the claimed trade dress of the motorcycle helmet at issue, including, *inter alia*, its "thin chin protector," "curved top," "relatively large eyeport height (compared to the height of the chin protector)," "a single-level non-stepped chin bar surface," "a thin chin bar height substantially thinner than the eyeport," and "a large diameter pivot point escutcheon." *Id.* (citation omitted). These components "thus appear[ed] to be particular features that together form[ed] a precise articulation of the trade dress, as opposed to a general category of features." *Id.* (citation omitted).

The AC here likewise articulates in detail the design attributes of the Lid Trade Dress and Bottle Trade Dress. The Lid Trade Dress is composed of "a bottle lid with a recessed dome top," a "conical spout protrud[ing] on one side," "a pair of brackets on the opposing side," "a pivoting arm," and "a circular spout closure element." AC ¶ 14. The distinctive elements of the Bottle Trade Dress include "a generally cylindrical bottle that is taller than is wide"; "a radially recessed domed portion of the lid"; "a conical spout"; "a generally symmetrical arrangement of the spout and brackets"; and "a flip-cap with a cylindrical end." *Id.* ¶ 19. These specific features, viewed together, articulate with adequate precision the trade dress; they are not a mere "general category of features." *Cardinal Motors*, 2025 WL 409796, at *8 (citation omitted). Each element is described with enough particularity to put the Court and defendant on notice of "precisely what the plaintiff is trying to protect." *Id.* at *6 (quoting *Yurman Design*, 262 F.3d at 117). Because this articulation is "sufficiently precise as to some specific combination of components present in the trade dress," *Cardinal Motors*, 2025 WL 409796, at *7, the articulation requirement is satisfied.

## ii.    Non-Functionality

A plaintiff asserting a trade dress claim bears the additional burden of proving "that the matter sought to be protected is not functional." 15 U.S.C. 1125(a)(3). The functionality doctrine "prevents trademark law from inhibiting legitimate competition by giving monopoly control to a producer over a useful product." *Nora Beverages, Inc. v. Perrier Grp. of Am.*, 269 F.3d 114, 120 n.4 (2d Cir. 2001); *see also Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 145 n.5 (2d Cir. 1997) (it is a "fundamental principle of trademark law that a trademark . . . does not grant a monopoly of production"); *Stormy Clime Ltd. v. ProGroup, Inc.*, 809 F.2d 971, 977–78 (2d Cir. 1987) ("Courts must proceed with caution in assessing claims to unregistered

trademark protection in the design of products so as not to undermine the objectives of the patent

laws. . . . Since trademark protection extends for an unlimited period, expansive trade dress

protection for the design of products would prevent some functional products from enriching the

public domain."). The "functionality" of a trade dress can be demonstrated by showing that the

mark has either "utilitarian" or "aesthetic" functionality. *Christian Louboutin S.A. v. Yves Saint*

*Laurent Am. Holdings, Inc.*, 696 F.3d 206, 217 (2d Cir. 2012) (citation omitted).

    A trade dress is considered functional in a utilitarian sense if it is (1) "essential to the use

or purpose of the article," or if it (2) "affects the cost or quality of the article." *Inwood*

*Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 850 n.10 (1982). A trade dress is

"essential" if it "is dictated by the functions to be performed" by the product. *Louboutin*, 754

F.2d at 219 (citation omitted). It "affects the cost or quality of the article" where it "permits the

article to be manufactured at a lower cost" or "constitutes an improvement in the operation of the

goods." *Id.* (citation omitted). A trade dress is functional in an aesthetic sense where "the

aesthetic design of a product is *itself* the mark for which protection is sought," such that "giving

the markholder the right to use it exclusively 'would put competitors at a significant non-

reputation-related disadvantage.'" *Id.* at 219–20 (quoting *Qualitex*, 514 U.S. at 165).

    Here, Jia Wei argues that Trove Brands makes only "conclusory assertions" to the effect

that its trade dress is non-functional. D. Mem. at 14. That is wrong. The AC pleads that "[t]he

design features embodied by [the trade dresses] are not essential to the function of the product"

in a utilitarian sense insofar as "[a] container that allows one to combine powders and liquids and

that also serves as a drink dispenser can have many different forms and shapes." AC ¶¶ 36–37.

It identifies 12 models of commercially available alternatives to the BlenderBottle trade dresses,

*see id.* at 8–10, a showing which supports that the trade dresses "[are] not in [their] particular

shape because [BlenderBottle] works better in that shape." *Id.* ¶¶ 36–37. Rather, the AC alleges, "there are numerous alternative shapes and structures that allow a consumer to combine powders and liquids and use them as a drink dispenser." *Id.* at ¶ 37. The AC further alleges that the trade dresses do not affect the cost or quality of the article insofar as "the design features of the [trade dresses] are not comparatively simple or inexpensive to manufacture because the elements are complex," and "[t]he design features of the [trade dresses] do not affect the quality of the product." *Id.* ¶¶ 40–41. In other words, "[t]he design of the [trade dresses] [are] not a competitive necessity." *Id.* And BlenderBottle is not functional in an aesthetic sense, the AC alleges, as the 12 proffered alternatives show that its exclusive right to use the BlenderBottle trade dresses "does not put competitors at a significant non-reputation related disadvantage." *Id.* ¶ 39.

Trove Brands has thus made more than "conclusory" allegations in support of non-functionality. And because functionality of trade dress is "a question of fact," courts routinely find it "premature to conclude that a plaintiff has failed to establish functionality at the motion to dismiss stage." *Deckers Outdoor Corp. v. Next Step Grp., Inc.*, No. 23 Civ. 2545, 2024 WL 3459609, at *3–4 (S.D.N.Y. July 18, 2024) (inviting expert testimony on "numerous design alternatives" to the products at issue); *Caraway Home, Inc. v. Pattern Brands, Inc.*, 2021 WL 1226156, at *9 (S.D.N.Y. April 1, 2021) (noting fact-sensitive nature of the "functionality" inquiry); *GeigTech E. Bay LLC v. Lutron Elecs. Co.*, 352 F. Supp. 3d 265, 281 (S.D.N.Y. 2018) (same); *Axis Imex, Inc. v. Sunset Bay Rattan, Inc.*, No. 8-3931, 2009 WL 55178, at *3 (N. D. Cal. Jan. 7, 2009) (the "inquiry into whether a product is functional . . . is fact intensive with multiple factors for the Court to consider," and "facts going to that functionality analysis cannot be resolved at the motion to dismiss stage but must await summary judgment or trial").

iii.    Distinctiveness

The Lid Trade Dress, unlike the Bottle Trade Dress, is a registered trademark and thus is plausibly pled as "distinct" for the reasons discussed above. *See supra*, sec. II.A.1.a.

As to the Bottle Trade Dress, the Supreme Court instructs that unregistered product-design trade dress can never be inherently distinctive. To be protected, the Lanham Act requires a showing of secondary meaning. *See Wal-Mart*, 529 U.S. at 216 ("[I]n an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectible, only upon a showing of secondary meaning."). Whether a trade dress has acquired a secondary meaning turns on whether the plaintiff "show[s] that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood*, 456 U.S. at 851 n.11. The "crux" of the secondary meaning inquiry, then, is whether "the mark comes to identify not only the goods but the source of those goods." *20th Century Wear, Inc. v. Sanmark-Stardust, Inc.*, 815 F.2d 8, 10 (2d Cir. 1987) (citation omitted).

The Second Circuit has identified six factors to guide the assessment whether a trade dress has acquired secondary meaning: (1) advertising expenditures, (2) consumer studies linking the mark to a source, (3) unsolicited media coverage of the product, (4) sales success, (5) attempts to plagiarize the mark, and (6) the length and exclusivity of the mark's use. *See Thompson Med. Co., Inc. v. Pfizer Inc.*, 753 F.2d 208, 217 (2d Cir. 1985). "No single factor is determinative," however, and the "fundamental question" is whether "the primary significance of the term in the minds of the consuming public is not the product but the producer." *Bristol-Myers Squibb Co. v. McNeil-P.P.C., Inc.*, 973 F.2d 1033, 1041 (2d Cir. 1992) (cleaned up).

At the pleading stage, Trove Brands has plausibly alleged that the Bottle Trade Dress has acquired secondary meaning in the marketplace. Jia Wei again terms Trove Brands's allegations on this point "conclusory," D. Mem. at 15, and protests that the AC does not plead that consumer surveys would indicate an association between the trade dress and BlenderBottle. But, at the pleading stage, no such showing is required. And the AC contains significant allegations that support BlenderBottle's secondary meaning in the market, tracking several of the factors above. These include that "[Trove Brands] has spent millions of dollars advertising its products bearing the [trade dresses]"; "[BlenderBottle] h[as] received significant unsolicited media attention" from numerous prominent outlets; that "[n]umerous celebrities have been photographed using BlenderBottle's products bearing the [trade dresses]"; that "BlenderBottle is the clear market leader in the shaker cup market, in large part through the popularity of its products"; that "BlenderBottle has derived hundreds of millions in revenues in the United States from sales of products bearing the [trade dresses]"; and that the "first use of the Bottle Trade Dress [was] in 2003." AC ¶¶ 17, 27–33.

Viewed together, these allegations plausibly plead that the Bottle Trade Dress has acquired a secondary meaning in the marketplace. And as to this point, too, whether a product has acquired a secondary meaning is a fact-sensitive inquiry that is ordinarily not resolved on a motion to dismiss. *See, e.g.*, *Kaplan, Inc. v. Yun*, 16 F. Supp. 3d 341, 348–49 (S.D.N.Y. 2014) (whether mark had obtained secondary meaning was a question of fact that could not be determined on a motion to dismiss); *Rockland Exposition, Inc. v. All. of Auto. Serv. Providers of N.J.*, 894 F. Supp. 2d 288, 316 (S.D.N.Y. 2012) ("Whether a mark has acquired secondary meaning is a factual determination, proof of which entails vigorous evidentiary requirements." (citation omitted)); *CourtAlert.com, Inc. v. e-Law, LLC*, No. 12 Civ. 2473, 2013 WL 4754819, at

*6 (S.D.N.Y. Aug. 26, 2013) (same); *In re Conn. Mobilecom, Inc.*, No. 2 Civ. 2519, 2003 WL 23021959, at *10 (S.D.N.Y. Dec. 23, 2003) (same).

### 2.    Likelihood of Confusion

Having found that, as pled, the Bottle Trade Dress, Lid Trade Dress, and '019 Trademark are entitled to Lanham Act protection at the first step, the Court next inquires whether there is likelihood of confusion between the plaintiff's goods and the defendant's. *See Sherwood 48 Assocs. v. Sony Corp. of Am.*, 76 F. App'x 389, 391 (2d Cir. 2003) (citing *Yurman*, 262 F.3d at 115–16). That inquiry turns on whether ordinary consumers "are likely to be misled or confused as to the source of the product in question because of the entrance in the marketplace of [the defendant's] mark." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016). It requires a "probability of confusion, not a mere possibility." *Nora Beverages*, 269 F.3d at 121 (citation omitted).

The Second Circuit has identified eight non-exclusive factors bearing on the likelihood of confusion: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the [plaintiff] may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market." *Wonderful Co. LLC v. Nut Cravings Inc.*, No. 23-7540-CV, 2025 WL 212064, at *2 (2d Cir. Jan. 16, 2025) (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961)). The "crucial issue" is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused, as to the

source of the goods in question." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004) (citation omitted).

Here, the AC solidly pleads that Jia Wei's allegedly derivative product is likely to cause confusion among consumers. It alleges that Jia Wei's "identical product[] sold to identical customers and through overlapping channels of trade and marketing" is "likely to cause confusion, cause mistake, and to deceive as to an affiliation, connection, or association of Defendant and/or its products with BlenderBottle, when there is none." AC ¶ 49. It alleges that Jia Wei's product wrongfully trades upon the "reputation and goodwill" that BlenderBottle has spent decades cultivating in the marketplace. *Id.* ¶ 69. Taken together, these allegations make plausible a finding that Jia Wei, aware of BlenderBottle's success in the market, sought to deceive customers by producing a near-identical product that capitalized on BlenderBottle's good name and reputation. That said, this inquiry is highly fact-intensive. After fact discovery, Jia Wei will be to liberty to argue that the *Polaroid* factors do not support Trove Brands's claim. *See Focus Prods.*, 647 F. Supp. at 222 (evaluating each *Polaroid* factor after fact discovery); *Coty Inc. v. Excell Brands, LLC*, 277 F. Supp. 3d 425, 445 (S.D.N.Y. 2017) (same).

In sum, Trove Brands has plausibly stated a claim for violations of the Lanham Act based on Jia Wei's infringement upon Trove Brands's intellectual property rights in the '019 Trademark, the Lid Trade Dress, and the Bottle Trade Dress.

## B.     State-Law Claims

Jia Wei next moves to dismiss the AC's claims for deceptive business acts and practices under New York General Business Law § 349 and unfair competition under New York common law.

### 1.    New York General Business Law § 349

Trove Brands alleges that Jia Wei's misappropriation of the BlenderBottle trademark and trade dress constitutes unfair and deceptive acts violative of § 349.  That section provides that "[d]eceptive acts or practices in the conduct of any business, trade or commerce . . . are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a).  This claim is ill-pled.  Federal courts have held that § 349 is "limited to the types of offenses to the public interest that would trigger Federal Trade Commission intervention under 15 U.S.C. § 45, such as potential danger to the public health or safety."  *DO Denim, LLC v. Fried Denim, Inc.*, 634 F. Supp. 2d 403, 409 (S.D.N.Y. 2009) (Swain, C.J.) (collecting cases).  And it is "well settled" that "trademark or trade dress infringement claims are not cognizable under the[] statute[] unless there is a specific and substantial injury to the public interest over and above ordinary trademark infringement or dilution."  *Id.*

Here, Trove Brands does not allege any such injury to the public.  The AC states, in conclusory fashion, that Jia Wei's "deceptive acts and practices . . . have caused and are expected to continue to cause consumer injury."  AC ¶ 85.  But that claimed injury is no different from the type of injury alleged in any "garden variety" trademark or trade dress claim.  It thus fails to state a claim under § 349.  *See DO Denim*, 634 F. Supp. at 409 (rejecting § 349 claim based on allegations of trademark and trade dress infringement); *see also, e.g.*, *Kaplan*, 16 F. Supp. at 352–53 (collecting similar cases).

### 2.    Unfair Competition

The elements of an unfair competition claim under New York common law "mirror" those of Lanham Act claims for trademark or trade dress infringement, with the added requirement that the plaintiff prove the defendant's "bad faith."  *Focus Prods.*, 647 F. Supp. 3d

at 228 (quoting *Gym Door Repairs, Inc. v. Young Equip. Sales, Inc.*, 331 F. Supp. 3d 221, 250 (S.D.N.Y. 2018)).  That requirement concerns whether "the defendant adopted its mark with the intention of capitalizing on plaintiff's reputation and goodwill and any confusion between his and the [plaintiff's] product." *Coty Inc.*, 277 F. Supp. at 454 (quoting *Lang v. Ret. Living Publ'g Co., Inc.*, 949 F.2d 576, 583 (2d Cir. 1991)).  Where the defendant's mark is not fully identical to the plaintiff's, the Second Circuit has upheld findings of bad faith where the defendant knew of the prior mark and its mark showed "similarities so strong that it seems plain that deliberate copying has occurred." *Paddington Corp. v. Attiki Importers & Distribs., Inc.*, 996 F.2d 577, 587 (2d Cir. 1993).  But "[t]here is a considerable difference between an intent to copy and an intent to deceive." *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 117 (2d Cir. 2009) (citation omitted).  "The intent to compete by imitating the successful features of another's product is vastly different from the intent to deceive purchasers as to the source of the product." *Streetwise Maps, Inc. v. VanDam, Inc.*, 159 F.3d 739, 745 (2d Cir. 1998).  Where the alleged infringer "prominently displays" its own mark and "uses a trade dress dissimilar to" the plaintiff's, such efforts "negate[] an inference of intent to deceive consumers as to the source of the product." *Kind LLC v. Clif Bar & Co.*, No. 14 Civ. 770, 2014 WL 2619817, at *11 (S.D.N.Y. June 12, 2014) (citation omitted).

Here, for the reasons reviewed above, the AC plausibly alleges that Jia Wei intentionally sought to capitalize on Trove Brands's success in the marketplace by selling its own copy of the BlenderBottle.  The similarities between the parties' products supports the inference of deliberate copying.  The shaker bottles appear identical in design, and some of the Jia Wei bottles even bear labels printed with the words "Blender Bottle." AC, Ex. 4.  And Jia Wei has not offered a benign explanation for these close similarities.  The AC has thus adequately alleged that Jia Wei

intentionally sought to "all-but-replicate" Trove Brands's product. *Focus Prods.*, 647 F. Supp. at 224; *Coty*, 277 F. Supp. 3d 425 (finding bad faith where defendant "used [plaintiff's] protected marks on its packaging in a way that, even with the disclamatory language, could only have been calculated to capitalize on [plaintiff's] goodwill."). The Court denies the motion to dismiss the unfair-competition claim.

### III.    Motion to Strike Under Rule 12(f)

Jia Wei, finally, moves to strike from the AC any references to the "presumption" of protectability afforded to registered trademarks, discussed *supra*, sec. II.A.1.a. *See* D. Mem. at 1. Under Rule 12(f), a court may "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are viewed with disfavor and infrequently granted." *Emilio v. Sprint Spectrum L.P.*, 68 F. Supp. 3d 509, 514 (S.D.N.Y. 2014) (cleaned up). "Whether to grant or deny a motion to strike is vested in the trial court's sound discretion." *Outlaw v. City of New York*, No. 22 Civ. 9288, 2024 WL 4825955, at *3 (S.D.N.Y. Nov. 19, 2024) (citation omitted)). "[I]f there is any doubt as to whether under any contingency the matter may raise an issue, the motion should be denied." *Carmona v. Spanish Broad. Sys., Inc.*, No. 8 Civ. 4475, 2009 WL 890054, at *10 (S.D.N.Y. Mar. 30, 2009) (citation omitted).

Jia Wei asks the Court to strike all references to "trade dress registration and any presumptions of non-functionality and validity based thereon" because, Jia Wei claims, Trove Brands obtained its trademark registration through "inequitable conduct." *See* D. Mem. at 1–2. The Court denies the motion. In resolving a Rule 12(f) motion, the Court is confined to the pleadings and draws all inferences in the plaintiff's favor. *See Greenlight Cap., Inc. v. Fishback*, No. 24 Civ. 4832, 2024 WL 5168623, at *3 (S.D.N.Y. Dec. 19, 2024); *Cty. Vanlines Inc. v.*

*Experian Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002). Neither the AC, nor the exhibits annexed to it, support the assertion that Trove Brands fraudulently obtained its trademark registration by "conceal[ing]" material information from the Patent and Trademark Office. D. Mem. at 1. And Trove Brands's opposition brief factually rebuts that claim. *See* Pl. Mem. at 17–18. The Court denies the motion to strike, without prejudice to Jia Wei's ability to explore these factual claims in discovery.

**CONCLUSION**

For the reasons above, the Court denies Jia Wei's motions, save that it grants the motion to dismiss Trove Brand's claim under New York General Business Law § 349, and the motion for judicial notice, limited to Exhibits A and B. The Clerk of Court is respectfully directed to close the motions pending at Dockets 46 and 47.

By separate order, the Court will schedule a *Markman* hearing, *see* Dkts. 60–62, and set a schedule for fact and expert discovery.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: February 21, 2025
New York, New York