UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TROVE BRANDS LLC *et al.*,

                         Plaintiffs,

          -v-

JIA WEI LIFESTYLE INC.,

                        Defendant.

24 Civ. 3050 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Plaintiffs Trove Brands LLC, d/b/a The BlenderBottle Company and Runway Blue, LLC (collectively, "Trove Brands") bring this patent-infringement action against Jia Wei Lifestyle Inc. ("Jia Wei"), alleging infringement of Trove Brands's U.S. Patent No. 8,695,830 (the "'830 Patent") and U.S. Design Patent No. D696,551 (the "Design Patent"). In connection with these claims, the parties have asked the Court to construe disputed patent terms. On April 8, 2025, the Court held a *Markman* hearing for this purpose. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996). The Court's constructions of the disputed terms are set forth below.

## I.    Background

The Court assumes familiarity with the factual and procedural background relevant to this controversy, which is set out in detail in *Trove Brands LLC v. Jia Wei Lifestyle Inc.*, No. 24 Civ. 3050, 2025 WL 580305, at *1–4 (S.D.N.Y. Feb. 21, 2025). The following summary is limited to the facts necessary for assessment of the discrete issues presented here.

The two patents at issue concern the lid component of a product called "BlenderBottle," a shaker bottle that mixes liquids with dietary supplements: (1) U.S. Patent No. 8,695,830, titled "Container Lid Having Independently Pivoting Flip Top and Handle" (the "'830 Patent") and

(2) U.S. Design Patent No. D696,551, titled "Bottle Lid Having Integrated Handle" (the "Design Patent").

On October 18, 2023, Trove Brands filed its Complaint in the United States District Court for the District of Utah. Dkt. 1. On April 22, 2024, on a joint stipulation, *see* Dkt. 22, the case was transferred to this District, Dkt. 23. On June 11, 2024, Trove Brands filed the Amended Complaint, the operative complaint today, bringing claims for patent infringement, trade dress infringement, trademark infringement, and state-law claims for unfair competition. Dkt. 37. On June 20, 2024, this Court held an initial conference. Dkt. 44.

On July 2, 2024, Jia Wei filed a motion to dismiss. Dkt. 46. On July 16, 2024, Trove Brands opposed. Dkt. 49. On July 23, 2024, Jia Wei replied. Dkt. 51. While that motion was pending, the parties briefed disputed areas of claim construction. On November 6, 2024, Trove Brands filed its opening claim-construction brief. Dkt. 59 ("Trove Br."). On December 6, 2024, Jia Wei filed a response, Dkt. 60, and on December 8, 2024, refiled its brief with a notice of errata, Dkt. 61 ("Jia Wei Br."). On December 13, 2024, Trove Brands filed a reply. Dkt. 62 ("Reply Br."). On February 21, 2025, the Court issued a decision that granted in part and denied in part Jia Wei's motion to dismiss, Dkt. 63, and, by separate order, scheduled a *Markman* hearing, Dkt. 64, which was held on April 8, 2025, Dkt. 74.

The parties initially disputed 13 of the claim terms appearing in the '830 Patent and the sole claim of the Design Patent. *See* Dkt. 58 ("Joint Disputed Claim Terms Chart"). As of the *Markman* hearing, the scope of the parties' dispute had narrowed[1] such that only seven of the '830 Patent claim terms, and the sole Design Patent claim term, remained in dispute.

---

[1] Before the hearing, Jia Wei withdrew its requests for construction of six disputed claim terms. *See* Dkt. 60 at 15; *see also* Dkt. 73 ("Transcript" or "Tr.") at 4.

II.     **Applicable Law**

Claim construction is an issue of law decided by the Court. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 970–71 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). To determine the meaning of claims in a patent, courts look "first to the intrinsic evidence of record, *i.e.*, the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). Where an analysis of the intrinsic evidence fails to resolve some ambiguity in a disputed claim, the Court may then turn to extrinsic evidence, *see id.* at 1583, which consists of "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises," *Markman*, 52 F.3d at 980.

Subject to certain exceptions addressed below, there is a presumption that each claim term should be construed according to its ordinary and customary meaning, as understood by a person of ordinary skill in the art in question at the time of the invention (a "POSITA"). *Mass. Inst. of Tech. v. Shire Pharm., Inc.*, 839 F.3d 1111, 1118 (Fed. Cir. 2016). Here, the parties agree that the relevant POSITA is an individual who "possess[es] at least a college degree in mechanical engineering or an equivalent degree." Reply Br. at 3. In certain cases, "the ordinary meaning of claim language as understood by a [POSITA is] readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005).

There are two exceptions to the rule that claim terms are construed according to their plain and ordinary meaning: first, where a patentee "sets out a definition and acts as his own lexicographer," and second, where a patentee "disavows the full scope of the claim term either in

the specification or during prosecution." *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (citation omitted). "Absent implied or explicit lexicography or disavowal," the plain meaning of the claim terms governs. *Trs. of Columbia Univ. v. Symantec Corp.*, 811 F.3d 1359, 1364 n.2 (Fed. Cir. 2016).

The standards for finding lexicography or disavowal are "exacting." *GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014). As to lexicography, it is well-settled that "patentees may choose their own descriptive terms as long as those terms adequately divulge a reasonably clear meaning to one of skill in the art." *Hockerson-Halberstadt, Inc. v. Converse Inc.*, 183 F.3d 1369, 1375 (Fed. Cir. 1999). But to act as his or her own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term," and "clearly express an intent to define the term." *GE Lighting Sols.*, 750 F.3d at 1309 (citation omitted). Similarly, "the standard for disavowal is exacting, requiring clear and unequivocal evidence that the claimed invention includes or does not include a particular feature. Ambiguous language cannot support disavowal." *Poly-Am., L.P. v. API Indus., Inc.*, 839 F.3d 1131, 1136 (Fed. Cir. 2016) (citations omitted). Disavowal need not be explicit. *See id.* A patentee may disavow claims by "distinguish[ing] or disparag[ing] prior art" in relation to the present invention. *Id.*

## III.    Disputed Claim Terms in the '830 Patent

The Court now proceeds to construe the disputed terms of the '830 Patent in the order presented in the parties' Joint Disputed Claim Terms Chart. *See* Dkt. 58.

### A.    "Handle"

The parties first dispute the meaning of the term "handle," which appears in claims 1–10, 12–17, and 19–20 of the '830 Patent. *See* Joint Disputed Claim Terms Chart at 1. The "handle" is the piece identified in the graphic as element "102." *See* Trove Br. at 9.

4



*Fig. 2*

Trove Brands contends that the term "handle" is common and does not need clarification or construction. *See* Trove Br. at 8. Jia Wei responds that courts have construed this term in the interest of clarity because the term "is not limited to what a lay person would consider a handle, e.g., [a] door handle." Jia Wei Br. at 9 (citing *Outillage v. Penn Tool Co.*, No. 3 Civ. 6299, 2004 WL 5644803, at *8 (C.D. Cal. Mar. 22, 2004) (construing "handle" to mean "a part that is designed to be held or operated with the hand and which does not extend into the area of articulation/articulation axis"). Jia Wei asks the Court to construe the term "handle" as "a part that is designed to be held or operated with the hand, including a holder, lever, connector, carabiner, or retainer." Jia Wei Br. at 9. Trove Brands counters that Jia Wei's proposed construction is atextual. The language of the specification, it contends, does not support that the "handle" must be designed with any particular intent in mind, or operated with the hand. *See* Trove Br. at 9 (citing *Acromed Corp. v. Sofamor Danek Group, Inc.*, 253 F.3d 1371, 1382–83 (Fed. Cir. 2001) (rejecting claim construction unsupported by the text)). It argues that Jia Wei's

proposed construction "invites complication and needless disputes" by inserting into the claim a list of seemingly exhaustive examples that the intrinsic record does not support. *Id.* at 9–10.

Given the parties' dispute over its proper scope, the Court will construe this claim term. *See O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008) (claim construction required where "the parties raise an actual dispute regarding the proper scope of the[] claims"). The Court agrees with Trove Brands that there is no basis to require that the "handle" have been designed with a particular intent or that it be operated by hand. Dictionary definitions of "handle" are in accord. *See, e.g.*, New Oxford American Dictionary, https://premium.oxforddictionaries.com/us/definition/american_english/handle ("[T]he part by which a thing is held, carried, or controlled."). The Court thus declines Jia Wei's invitation to import a functional requirement not recited in the claim itself. *See Ecolab, Inc. v. Envirochem, Inc.*, 264 F.3d 1358, 1367 (Fed. Cir. 2001) ("Where the function is not recited in the claim itself by the patentee, we do not import such a limitation.").

At the *Markman* hearing, the Court proposed the following construction, which embraces the plain and ordinary meaning of the term "handle": "A part that is designed to be held, carried, or controlled." Tr. at 4. Neither party objected to this proposed construction. *See id.* at 5. Accordingly, the Court adopts the construction it proposed at the hearing.

### B.    "Handle Pivot"

The parties next dispute the term "handle pivot," which appears in claims 1–2, 4, 12, 15, and 20. *See* Joint Disputed Claim Terms Chart at 2. The "handle pivot" is the piece identified in the graphic below as element "102b." Trove Br. at 11.



*Fig. 1*

Jia Wei, drawing on the Oxford English Dictionary's definition of the term, asks the

Court to construe "handle pivot" as "a short shaft or pin, usually of metal and pointed, forming

the fulcrum and center on which something turns or oscillates that allows the handle to pivot,

turn, or rotate about an axis." Jia Wei Br. at 9–10. Trove Brands counters that "handle pivot" is

clear in context and that Jia Wei is improperly "attempt[ing] to inject requirements regarding the

size, location, material composition, and function for the handle pivot." Trove Br. at 11. Trove

Brands further argues that, insofar as Jia Wei defines "handle pivot" as an entity that "allows the

handle to pivot," it improperly "us[es] a variation of the term itself in the proposed construction"

and "is improper for providing clarity regarding the meaning and scope of the term." *Id.* at 12.

Jia Wei responds that some claim construction is necessary because "a lay person will not understand [the term] as a noun designate, versus when used as a verb." Jia Wei Br. at 10.

The Court will construe this term, too, given the parties' dispute over its scope. *See O2 Micro*, 521 F.3d at 1360; *Phillips*, 415 F.3d at 1313. At argument, the Court proposed a modified version of Jia Wei's construction: "The fulcrum upon which the handle turns, oscillates, or rotates about a fixed axis." Tr. at 6. Jia Wei's counsel asked that the Court import the list of non-exhaustive examples identified in patent specification. *See id.* at 8–11; Dkt. 59-2 ("U.S. Patent '830") at 3:15–17 ("[Handle] can also be formed in a shape other than a loop as long as the handle includes handle pivots on both sides (e.g., a hook, a clip, etc.).") However, the Court, heeding guidance from the Federal Circuit, will not import limitations from the specification into the claim itself. *See Thorner v. Sony Computer Ent. Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012) ("We do not read limitations from the specification into claims[.]"). As the Federal Circuit has explained, claim terms are to be read in context of the specification and prosecution history. *See Phillips*, 415 F.3d at 1315.

Accordingly, the Court adopts the following construction, to which no party objected, *see* Tr. at 13–15, when the Court proposed it at the *Markman* hearing: "The fulcrum upon which the handle turns, oscillates, or rotates about a fixed axis."

**C.    "Flip Top Pivot"**

The next disputed term, "flip top pivot," appears in claims 1, 3, 5, 7, 12–13, 18, and 20. *See* Joint Disputed Claim Terms Chart at 2. The "flip top pivot" is the piece identified in graphic as element "101a." *See* Trove Br. at 12.



**Fig. 1**

Jia Wei proposes that the Court construe the term as "a short shaft or pin, usually of metal and pointed, forming the fulcrum and center on which something turns or oscillates that allows the flip top to pivot, turn, or rotate about an axis." Jia Wei Br. at 10. As with the "handle pivot," Trove Brands argues that the term is clear in context and that Jia Wei's proposed definition is atextual. *See* Trove Br. at 13. At argument, the Court proposed a construction different from that of the parties, consistent with the previously construed "handle pivot": "The fulcrum upon which the flip top turns, oscillates, or rotates about a fixed axis." Tr. at 15. As neither party objected, *see id.*, the Court adopts this construction of the term.

### D.    "First Receiving Portion" and "Second Receiving Portion"

The parties next dispute the meaning of the terms "first receiving portion" (claims 1, 12) and "second receiving portion" (claims 1, 4, 12, and 15). *See* Joint Disputed Claim Terms Chart at 2–3. Jia Wei argues that the terms are fatally indefinite. The patent specification, it argues, does not make clear which components are "receiving portions," because the specification uses the terms "receiving portions" and "openings" interchangeably whereas the terms refer to separate elements. *See* Jia Wei Br. at 11–12; *see also* U.S. Patent '830 at 3:23–25 ("[H]andle 102 is attached to mount 104 by inserting handle pivots 102b into *openings 104b or receiving portions* in posts 104a of mount 104." (emphasis added)).

A claim term is indefinite if, "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Because a "lack of definiteness renders invalid 'the patent or any claim in suit,'" *id.* at 902 (quoting 35 U.S.C. § 282), a finding of indefiniteness would render construction unnecessary. The indefiniteness requirement serves, in effect, "a public notice function, ensuring that the patent specification adequately notifies the public of the scope of the patentee's right to exclude." *Ave. Innovations, Inc. v. E. Mishan & Sons Inc.*, 310 F. Supp. 3d 457, 462 (S.D.N.Y. 2018) (citation omitted), *aff'd*, 829 F. App'x 529 (Fed. Cir. 2020). To withstand definiteness review, a claim "must contain objective boundaries to provide sufficient notice to those of skill in the art to understand the invention." *Id.* (invaliding claim term "operative position most convenient to the user" because it did not provide an "objective means of measuring what position is most convenient to any given user," and the relevant POSITA "would not be able to understand with reasonable certain[t]y how to construct a noninfringing device").

10

The Court is satisfied that the terms "first receiving portion" and "second receiving portion" are sufficiently clear in context to withstand definiteness review. Claim one states that the "first receiving portion" connects the "first handle pivot" to the "first post of the mount." U.S. Patent '830 at 4:42–43. And the specification further states that, "[a]s shown in Fig. 2, handle 102 is attached to mount 104 by inserting handle pivots 102b into openings 104b or receiving portions in posts 104a of mount 104." *Id.* at 3:23–25. The function of the receiving portion, in context, is clear: it attaches and secures the handle pivot to the mount. Although the specification could have defined the terms at a higher level of specificity, they are not fatally ambiguous. *See Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1384 (Fed. Cir. 2005) ("[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." (quoting *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003)); *Nautilus*, 572 U.S. at 899 ("[T]he certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." (citation omitted)). The intrinsic record makes sufficiently clear that the "receiving portion" is located in the post of the mount and that, whether comprised of a snap fit, pin, protrusion, or something else, it must be capable of receiving or securing an attachment such as a handle. Accordingly, "first receiving portion" and "second receiving portion" provide reasonable certainty in the context of the specification, *see Nautilus*, 572 U.S. at 901, and are thus not indefinite.

At argument, the parties agreed upon the following construction: "The receiving portion is a part that is capable, by snap fit, pins, hook, clip, or other means, of supporting an attachment. The numerical designations 'first' and 'second' denote which side of the object the receiving portion appears on, the 'first' occupying the position closest to the user, and the 'second'

11

occupying the position furthest from the user." Tr. at 16–17, 22–23. The Court adopts this construction.

### E.    "First Protrusion" and "Second Protrusion"

The parties, finally, dispute the claim terms "first protrusion" (claims 1, 4, 12, and 15) and "second protrusion" (claims 1–5, 12, 18, and 20). Joint Disputed Claim Terms Chart at 3. The protrusions are identified as "101b" on each side of the flip top pivot, as depicted below. Trove Br. at 16.



**Fig. 1**

Jia Wei proposes to construe the claims as "a protrusion or pin extending from or through a structure." Jia Wei Br. at 14. Jia Wei insists that such clarification is "necessary to educate

and clarify for the jury that a protrusion is a part that allows axial rotation and to provide context of the interactions with other parts." *Id.* Trove Brands responds, correctly, that Jia Wei's proposed definition is circular, as it uses the term "protrusion" in the very definition of the word. *See* Trove Br. at 16; *see also Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (claim construction is "not an obligatory exercise in redundancy"; it is "a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of the infringement"). The claim term, Trove Brands argues, is clear in context; the protrusions appear on Figure 1 as "101b" on either side of the flip top pivot.

Trove Brands, at argument, asked that the Court modify Jia Wei's proposed construction to use an alternative word in lieu of "protrusion," to avoid a circular construction. *See* Tr. at 29. Jia Wei did not object to that change. *See id.* at 30–31. The Court will accommodate Trove Brands's unopposed suggestion, and construes "first protrusion" and "second protrusion" as follows: "A physical extension that stretches from or through a structure. The numerical designations 'first' and 'second' denote which side of the object the protrusion appears on, the 'first' occupying the position closest to the user, and the 'second' occupying the position furthest from the user."

## IV.    The Design Patent

Having construed the disputed claim terms of the '830 Patent, the Court turns to the Design Patent. Titled "Bottle Lid Having Integrated Handle," it consists, as is required by law, *see* 37 C.F.R. § 1.153(a), of one claim: "The ornamental design for a bottle lid with an integrated handle, as shown and described." Trove Br. at 25.



Jia Wei asks the Court to determine which elements are (1) functional or (2) found in prior art, and to exclude them. *See* Jia Wei Br. at 17–18. Jia Wei proposes the following construction: "The ornamental design for a bottle and lid with an integrated handle, as shown in Figures 1–6, excluding from consideration in the overall ornamentation of the design the functional handle, spout, dome shape, round base, flip top, and posts, which are also eliminated from consideration by the prior art." Joint Disputed Claim Terms Chart at 7.

The Court, at this stage, declines Jia Wei's invitation to determine which elements of the design patent are functional or found in prior art. As the Court observed in its February 21, 2025 Opinion and Order, such are fact-sensitive inquiries that should not be undertaken until discovery is complete. *See Trove Brands LLC*, 2025 WL 580305, at *7 (collecting cases); *see also CommScope Techs. LLC v. Dali Wireless Inc.*, 10 F.4th 1289, 1300 (Fed. Cir. 2021) (prior art inquiry is "fact-intensive"); *PHG Techs. v. St. John Cos.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006)

(same with respect to functionality inquiry). If Jia Wei elects to address these issues later in the litigation, after the benefit of fact discovery, it may do so.

To the extent that defendants seek a detailed verbal construction of the Design Patent, the Court similarly declines the invitation. Recognizing the "difficulties entailed in trying to describe a design in words," the Federal Circuit has instructed district courts not to "attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (citation omitted); *see also id.* (district court is not "obligated to issue a detailed verbal description of the design" as "a design is better represented by an illustration"); *LKQ Corp. v. GM Glob. Tech. Operations LLC*, 102 F.4th 1280, 1301 (Fed. Cir. 2024) ("[W]e have repeatedly held that tribunals should not treat the process of claim construction in design patent cases as requiring a detailed verbal description of the claimed design." (cleaned up)); *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1302–03 (Fed. Cir. 2010) ("[C]laim construction must be adapted to a pictorial setting" for design patents, warning of "the dangers of reliance on a detailed verbal claim construction"); *Focus Prods. Grp. Int'l, LLC v. Kartri Sales Co., Inc.*, No. 15 Civ. 10154 (PAE), 2018 WL 3773986, at *14 (S.D.N.Y. Aug. 9, 2018) (same). For that reason, the Court declines to verbally construe the design patent. *See Hutzler Mfg. Co. v. Bradshaw Int'l, Inc.*, No. 11 Civ. 7211, 2012 WL 3031150, at *5 (S.D.N.Y. July 25, 2012) ("[T]his Court will not provide a detailed verbal description of the '114 and '463 Patents and will rely instead on the illustrations set out in the patents."); *Focus Prods. Grp.*, 2018 WL 3773986, at *14 (same).

## CONCLUSION

For the foregoing reasons, the Court has construed the disputed claim-construction terms in the manner above.

As the parties' amended case management plan provides, *see* Dkt. 76, all fact discovery shall be completed no later than 19 weeks after the Court issues this order—accordingly, by September 25, 2025.  All expert discovery shall be completed no later than 34 weeks after this order—accordingly, by January 8, 2026.  A telephonic case management conference is hereby scheduled for Tuesday, October 28, 2025, at 2 p.m.  The Clerk of Court is respectfully directed to terminate the motion pending at Dkt. 181.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: May 15, 2025
       New York, New York

16